The lessors of the plaintiff claimed title:
1. Under a grant to James Dickson, dated in 1785.
2. By a deed of bargain and sale, dated in 1791, from Dickson to Wallace Alexander, for lot number 3, in the town of Lincolnton, which had been laid off on the land covered by the grant to Dickson. The lot was described as beginning at a stake, the northeast corner of lot number 2, running thence six poles northeast, along the main street to a stake, thence running so as to form an oblong.
3. By a deed from Alexander to Henry Cline. (66)
4. By a deed from Cline to Jacob Summey, dated in 1800, for a part of lot number 3, beginning at the northeast corner of a house standing on the main street, thence southeast twelve poles to a stake, thence four poles and three feet southwest to a stake; thence northwest twelve poles to a stake, and thence to the beginning.
5. By another deed from Cline to Summey, dated in 1800, and also for a part of lot number 3, beginning at the northeast corner of the house standing on the lot, and mentioned in the last deed, running thence southeast twelve poles to a stake; thence northeast one pole and thirteen feet to a stake; thence northwest twelve poles to a stake; thence to the beginning, being the northeast corner of the original lot number 3.
6. By a deed from Summey, also dated in 1800, to Martin Shuford, one of the lessors of the plaintiff, for the whole of the lot number 3, in which it was described as beginning at the northeast corner of lot *Page 66 
number 2, running thence along the main street six poles to a stake, thence so as to form an oblong.
The defendant claimed lot number 2, which adjoined number 3, under a deed from Dickson, dated in 1787, which described it as measuring in front six poles.
The premises in dispute consisted of a piece of land seventeen feet wide in front, and the only question was whether the defendant's deed covered it; for if it did, his possession had been such as to protect him under the Act of 1715. If the front of each lot was six poles only, then the defendant's deed did not cover the land in dispute. If, on the contrary, a front of six poles and six feet was allowed to each lot, then it was clearly within the bounds of his deed. The defendant offered to prove that although his deed called for six poles only, in truth a front of six poles and six feet was intended, and that when the town was originally laid off posts or stakes were set up at the corner of every lot, and the distance between these posts or stakes in every instance was six poles and six feet. The lessors of the plaintiff objected to the introduction of parol evidence to vary the description contained in the deed, but his (67) Honor overruled the objection for the reasons stated by him in his charge given below.
The defendant then proved by a witness, who purchased lot number 4 in the year 1787, that there was an old house standing on it, and at the corner of the house was a stake, which was pointed out to him as the corner of his lot; that the stake was a piece of split pine wood. This lot number 4 adjoined lot number 3, owned by the lessors of the plaintiff, on the side opposite to that where the latter joined lot number 2. The witness also proved that by measuring from the centre of the public square (which was the beginning of the survey of the town) in a straight line to the point where the stake he spoke of was placed, and allowing six poles only to each lot, the distance would not reach that point by about nineteen feet, but allowing six poles and six feet to each lot, the distance would only fall short one foot. The same witness proved that twenty-five years ago Shuford, one of the lessors of the plaintiff, and himself, dug a well and erected a wash-house, so as to be upon the line between them, on the supposition that six poles and six feet was the front of each lot.
The defendant also proved that a stake was standing on one of the corners of the public square in the year 1799, which was said to be the corner of it, and that measuring from that stake, and comparing the measurement with the erection of all the buildings on the square, six poles and six feet was the front of each lot.
The plaintiff, to rebut this testimony, proved by the original plan of the town, and the declarations of the surveyor who made it, who was *Page 67 
dead, and of other old persons also dead, that six poles only was the front of each lot.
On the other hand, the defendant proved declarations of Dickson, the original proprietor, and of a purchaser from him, both of whom were dead, that in laying off the town six poles and six feet was the front of each lot.
His Honor instructed the jury that if from the evidence before them they were satisfied that lots numbers 1, 2 and 3 had been originally run and staked off, or posts set up for the corners, and that the width thus allotted to them was six poles and six feet, they should be (68) governed by the lines actually run and marked; that if they were not satisfied by the evidence that the boundaries had been thus run and marked, they should be governed by the description of the boundaries contained in the deed; that the question presented by the case was, whether parol evidence was admissible to control or vary the calls in the deeds; that it was believed that a series of decisions authorized the introduction of parol evidence, but as the Supreme Court had declared that they were not aware of any such series of decisions, it was necessary to examine the cases to see how the matter was; that the case ofStanden v. Bains (1 Hay., 238) was decided in 1795. The plaintiff claimed to a dotted line on the plat of the survey made in the cause. The course and distance did not extend so far, but only to a black line. The court permitted evidence to be given; that the dotted line wasmarked, and had for a long time, since 1740, been reputed to be the line of Arkill's tract, which was the land claimed by the plaintiff, the court in that case saying the jury may consider whether there is sufficient evidence to satisfy them that this dotted line is the real boundary, though not truly described in the patent; that the case of Rountree v.Person was approved by the Court; that the case of Blount v. Benbury
(2 Hay., 353), decided in 1805, was where the calls of the grant were for "Beasley's line, south 85 east", and the court permitted evidence to be offered to prove that at the end of Beasley's line the true boundary was a marked line running parallel to Beasley's and fifty-one poles be offered to prove that at the end of Beasley's line the true boundarydecisions had been made, where the line described in the deed had been disregarded to follow a marked line; that in the case of Loftin v. Heath
(2 Hay., 347) the grant called for a beginning "at a cypress, and thence round to a pine at the creek", and evidence as admitted to show that the beginning was at the pine and not the cypress, and Taylor, J., remarked, "it must now be taken for law in this country that, notwithstanding any wrong description in the plat or patent, the (69) party who is likely to suffer may show the mistake". That inSlade v. Green (2 Hawks, 218) Henderson, J., remarked that "parol *Page 68 
evidence had been admitted to vary the course and distance called for in the deed by showing marked lines and corners, and where the deed refers to no such marks as boundaries there is no ambiguity, and it is admitting parol evidence to control the deed. It is now too late to vary the rule". That in McNeil v. Massey (3 Hawks, 91) it was decided that where a patent calls for a tree as the beginning, and also calls for stakes for the other corners, that the course and distance will be controlled by a marked boundary, and that such a marked boundary may be proved to have been made by adducing as evidence other grants calling for it, Henderson, J., remarking "such a boundary, like all other facts, may be inferred from other facts, if the fact proved be relevant to the fact to be inferred", and alluding to other conterminous grants calling for the boundary in dispute, he says, "These facts pointed to something that controlled the courses and distances in the grants. Whether they proved that marked trees were once there is an inference of fact for the jury. All the Court can say is that they are relevant."
That it was believed those decisions established the following principles, to wit:
1. That where the grant calls for course and distance, and also some particular object as the boundary, parol evidence is admissible to show the position of this object, although it differs from the course and distance.
2. That where the grant calls for course and distance, and also for a stake as the particular object, parol evidence is admissible to show that a tree and not a stake is the object marked by the surveyor as the boundary, although it varies in all respects from the description in the grant.
3. That where two different trees are marked, and it is apparent that they were marked at the same time, parol evidence is admissible to show that one of them was designated as the beginning when the (70) survey was made, although it varies wholly from the description in the deed, and the same kind of evidence is admissible to show a line running in an opposite direction from the course in the grant, and running, too, in such a way as would cause the beginning thus established to be in the middle of such a line and not one of the corners. Such was the case in Loftin v. Heath, where it was pronounced to be settled law by ChiefJustice Taylor.
4. That boundaries contained in other grants where relevant, and likewise common reputation, are admissible as evidence to establish boundaries.
That such were the principles which were believed to be applicable to the case under consideration; that the defendant alleged that the lines of the town of Lincolnton had been run and that the corners of the *Page 69 
lots had been designated by stakes or posts set up when the lines were run and before the sale of the lots and the conveyances before set forth, and that he offered to prove by parol the points at which those stakes or posts were placed, and that those points were at the distance of six poles and six feet; that there was an entire uniformity in the decisions of those cases where the grant calls for course and distance, and it was proposed to be shown that a marked line was made which varied from them; that it made no difference whether the marks be still in existence, provided they were originally made as the boundary. Could it make any difference in principle whether the marks consisted of a chop on a tree, a stone, a stake, or a post? That trees bear the marks where the lines are run in wood lands, but the boundaries of lots in towns are designated by posts, stakes or stones; that in the latter mode it was proposed to be shown that the town of Lincolnton had been laid off, and the facts before set forth were offered in proof of it. The stake standing in 1789, as the corner of number 4, another stake standing in 1799, both of them reputed to be corners; the well dug and the wash-house erected between twenty and thirty years ago, then and since acknowledged by the parties as upon their lines; common (71) reputation, the declaration of Dickson in 1792 or 1793; the present width of the public square, that such were the facts offered. That the question was not whether they were full proof, but whether they were relevant; that it was believed they were, and that the introduction of such testimony was authorized by a series of decisions; that the Chief Justice
of the Supreme Court, however, was not aware of any such series, and says that "for many years the Supreme Court have, in all cases except one, adhered to the description in the deed"; that the case to which he alluded was where the deed describes the land by course and distance only, and old marks are found corresponding in age, as well as can be ascertained with the date of the deed, and so nearly corresponding with the course and distance that they may well be supposed to have been made for its boundaries, the marks shall be taken as the termini of the land. This is going as far as prudence permits." That if this is to be the rule, it was believed that many decisions will be overruled, the settled law altered, and consequently titles rendered insecure. That by it, where description is by course and distance, no boundary will be permitted to vary from it, except it be made by chops on trees, for they are the only marks that can correspond in age with the date of old grants, by the distinct laminae
formed by the growth each year — a post, stake or stone would be wholly unavailable; that the decisions have been that it was the line run or marked that was to govern if it could be ascertained; that this rule would restrict it to marks on growing timber, but a corner tree may be destroyed; that then it may be shown *Page 70 
where it stood, and should it not also be shown where a corner-stone or a corner-post or a corner-stake stood? That in another part of the opinion it was said that "marked termini" may control course and distance, but that this will not authorize the admission of the parol evidence above set forth. "For such acts or marks were not made to describe the calls of the deed, for the deed was made already." (72) That this seemed to him to be forming an opinion of the kind of evidence legally admissible, from the effects is produced upon the mind of the judge; that the facts adduced were admitted as relevant circumstances from which the jury might infer that the lines of the lots were run and stakes set up at six poles and six feet before the deeds were made; that as to the stakes proved to have been standing in 1789 and 1799, it was a matter for the jury to say whether they were "monuments of description, erected when the lots were separated from other lands." That it was not thought that the title could pass by parol, nor that the well and wash-house were placed there when the lost were run. But they were relevant circumstances to show what was originally done. That the opinion of the Supreme Court admitted that "such acknowledgments are evidence of the place where the marks or termini once were; but they are only evidence where it has been shown that there were some marks to which such acknowledgements pointed." That in this case a stake was proved to have been standing as a corner in 1789 and another in 1799; that from that and other facts proven it was left to the jury to decide whether these posts are stakes and others had been set up as monuments of description when the lots were laid off; that the grant of the land was in 1785; that when the town was laid out did not appear, but in 1789, the stake is described as an old piece of split pine then standing; that it surely could not be meant that the mark must be in existence when the controversy arises, but it seemed to be decided that some witness must have seen it, for it states "that there were some marks to which such acknowledgments pointed." That by this rule it was not perceived how the corner could be established that had been destroyed time out of mind, although there might have been a uniform tradition where it stood, both by common reputation and the acknowledgments of the parties, accompanied too by very expensive improvements upon the land as claimed by each: that it was stated that the law as laid down by the Superior Court was an abstract proposition, (73) true in itself, but wholly inapplicable to the case. That it was hoped that the Supreme Court would perceive in therefore going reasoning enough to show that it was deemed to contain the principles on which the rights of the parties rested. His Honor in conclusion said he believed with confidence that whatever disposition might be made of the case, nothing in his opinion could be supposed disrespectful to the *Page 71 
Supreme Court, and that it would be a matter of sincere regret to him should such an inference be drawn, as he believed it most respectful to that Court to give it an opportunity of reviewing its own decisions, where they were supposed by the judges of the Superior Court to violate what the late Chief Justice Taylor declared to be "settled law."
A verdict was returned for the defendant, and the lessors of the plaintiff appealed.
I am glad that this cause has returned upon us; not that I am desirious [desirous] of unsaying what I said upon the former occasion; for with that opinion, so far at least as it had a bearing upon the case, I am satisfied. But it affords me an opportunity of expressing myself fully upon what may be called stake boundaries. That stakes may be real boundaries, and so intended by the parties, and not mere imaginary points, I mean not to controvert. But I said before, and now think, that where they are given with course and distance, and no further description given of them; for example, "to a stake,"or "thence to a stake in a line,"they were intended by the parties, and so should be understood to designate imaginary points; that is, where the line terminates or intersects another line. And this, I say, is founded on universal practice and the nature of man. For having at hand a more certain and definite means of pointing out the objects, as a (74) cedar, a pine, or an oak — or a stake standing in a field, a wood, a pond, or near the road, creek, river, or some other additional means of description, and not using them, and having given the course and distance, they intended to rest on that, and that alone to point out the location of the stake, or rather where they intended should be the spot represented by the description of a stake. To permit parol evidence to show that a stake was put up, or was seen at or near the spot, is to permit proof in opposition to the intention of the parties. For if one was actually set up, it was designed for some temporary purpose, and not as a landmark whereby the boundaries should be established. For the parties designed a more certain description. The court should not have heard the evidence, or having heard it, should have instructed the jury that such evidence did not vary the description given by the course and distance in the deed. For it is the province of the court to declare what are the calls of a deed, and where there are more than one call, which is the controlling one. What may be the proper rule, where the court can rationally perceive, that the parties intended by the word stake something more than an imaginary point, by superadding a *Page 72 
further description in the deed, this case does not render necessary to say. But I suppose a court would be bound to say, if that intent was collected from the deed, however frail it might be, and however likely to produce mistake, fraud and perjury; yet as the parties had thought proper to make it their boundary, the court could not interfere. But even there the proofs controlling course and distance, I think, should be of the most satisfactory kind, and such intent should appear in the deed. Prima facie where course and distance are given, nothing more than an imaginary point is presumed to be intended.
Judge Hall has with much force given reasons why a stake should not in any case control the course and distance. So far as policy is concerned, his argument is unanswerable.
(75) HALL, J. Deeds for land, without location, are nullities. To be of any avail they must in fact, or by way of reference, be fixed to the earth. They must be fixed to immovable objects. They may call for water courses, rocks, trees, or any thing immovable, that may be identified. Marked trees, the most common, are partly natural and partly artificial boundaries. They are however immovable, and the marks are made for the purpose of identifying them. So long as these last, the location of the land is certain; it cannot be varied. When they become effaced and destroyed by length of time there can, from the nature of things, be no written evidence to show the spots of ground on which they grew. Hence, necessity permits the introduction of parol evidence for that purpose. But if a deed for land is originally made without a location, and without a name, parol evidence has never yet been permitted to give it either.
Movable things may become the boundaries of land, when they become immovable, as a wall or a pillar of stones, or any other fixed, stable substance. I consider stakes to be only imaginary points. They bespeak more of locality, to be sure, than floating feathers on the water, but they are as unfit to be boundaries of land. Ordinary accidents may draw them from the earth and destroy them. But deeds, impelled by all the force of wickedness and fraud, cannot pull up trees by the roots. Stakes would not answer the ordinary purpose of common honesty and prove nothing in a contest for boundary.
Deeds must call for boundaries of the kind I have mentioned, and the furthest the common law has been departed from is to connect deeds with such boundaries by parol evidence, where it appears they have been marked for that purpose, although the deed does not call for them, provided it is in part located as by calling for some corner or place not disputed or to be disputed. If a half acre of land is sold, beginning at a particular corner, and the lines run accordingly, the half acre only *Page 73 
passes, although the surveyor surveyed more than half an acre, because the lines were not properly marked. But if he surveyed (76) more than half an acre, and marked the lines in a proper manner, the whole that he surveyed would pass. I concur altogether in the opinion of theChief Justice.